# ANDREWS v. FOSTER et al.*

## STUART v. SAME.

## STEIMLE v. SAME.
### No. 16373.

Court of Appeal of Louisiana. Orleans.
June 22, 1936.

H. W. & H. M. Robinson, of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellees.

WESTERFIELD, Judge.

Neil Andrews, Albert Stuart, and Charles Steimle were injured as a result of a collision between a Ford automobile belonging to and driven by Neil Andrews, and a motortruck belonging to the defendant J. C. Foster and driven by his employee. They brought separate suits for damages against J. C. Foster and the Great American Indemnity Company, his insurance carrier. The three suits were consolidated below and tried on the same record. The accident occurred on the Baton Rouge-New Orleans Airline Highway near the Baton Rouge end of a small concrete bridge about 3 miles south of the town of Norco in the parish of St. Charles at 2 p. m. on Sunday, May 12, 1935.

Foster denied all charges of negligence imputed to his employee in the three petitions, reconvened in the Andrews suit, and claimed the sum of $208.35, as damages alleged to have been sustained by his truck as a result of the collision.

There was judgment below dismissing the suit of each of the three plaintiffs

and the reconventional demand as well. All three of the plaintiffs have appealed.

The undisputed facts are that the Andrews car, which was running about 75 feet behind another automobile driven by Fred Kalil, was proceeding in the direction of the city of New Orleans. The Kalil car collided with the Foster truck, which was being driven in the opposite direction or towards Baton Rouge, and was forced against the concrete railing of the bridge. After striking the Kalil car the right front portion of the Foster truck collided with the right side of the Andrews car at about the middle. The question of how and why the collision between the Andrews car and the Foster truck occurred is the subject of much controversy between counsel and not at all clear to us. The same can be said of the position of the colliding vehicles after the accident. We have no difficulty, however, in finding the driver of the motor-truck guilty of negligence in connection with the first collision, which we believe to be of importance in the determination of responsibility for the second accident.

Mr. and Mrs. Fred Kalil and R. H. Oliver, Jr., the occupants of the Kalil car, testified most positively that just before the accident they were driving on their right side of a black line which divides the 20-foot roadway at that point, and that when several hundred yards away from the Foster truck they noticed it was "zig-zagging from one side of the road to the other" (Kalil). "I noticed this truck coming towards us at a fast rate of speed, running all over the road, from one side of the road to another * * *" (Mrs. Kalil). "It was going from side to side of the road as if out of control" (Oliver). They also testify that the truck was on its left or wrong side of the road as it neared the Kalil car and that in a last ineffectual effort to avoid the collision Kalil turned sharply to his left, but was struck by the truck on the right side near the front door. In a sense, these witnesses were disinterested, their claims having been settled to their satisfaction prior to their having testified in the case.

Andrews, Stuart, and Steimle are, of course, very much interested in the outcome of the litigation. Their testimony, as might be expected, corroborates the occupants of the Kalil car.

As opposed to this evidence on plaintiffs' behalf, we have only that of Foster's two employees, the driver, Robert Gorrell, his helper, Willie Rose, and one J. J. Taylor, who was driving a truck about 75 yards behind the Foster truck. The testimony of the two employees of the defendant Foster, and their explanation of the accident, is entirely different from that given by plaintiffs and their witnesses. They place the Kalil car, before the accident, on the left side of the black line dividing the highway and directly in their path, the explanation of the point of contact being that as the two vehicles approached each other the driver of the Kalil car pulled further to the left and the truck to its left, causing the right side of both vehicles to come into contact.

Taylor, in a measure, corroborates the testimony of Foster's employees, but, as we have said, the evidence clearly establishes the responsibility of the driver of the Foster truck for the collision, which occurred between that truck and the Kalil car.

We are unable to determine exactly how the second accident occurred. Defendants claim that the Foster truck, which had just struck the Kalil car, was motionless at the time and standing on its extreme right (plaintiffs' left) of the highway, whereas plaintiffs contend that it was on the other side and directly in their path. The probability is that plaintiffs are correct for the truck, just before striking the Kalil car, was traveling on the left or wrong side of the road and it is very likely that it remained on that side, being much the heavier of the colliding vehicles, but wherever it was, we are convinced that its driver caused the emergency which faced the driver of the Andrews car, which was following a short distance behind the Kalil car.

There is a plea of contributory negligence in the record which can have application only to Andrews since the other plaintiffs were passengers. But, we do not believe that Andrews was guilty of negligence. He may not have pursued the course which a prudent person, upon proper reflection, would have taken, but under the stress of the circumstances confronting him, caused by the collision between the Kalil car and the truck, there was little opportunity for the exercise of

deliberate judgment. Downey v. Dittmer (La.App.) 151 So. 653. Nevertheless, his action in turning sharply towards his left seems well advised, since to have turned the other way would have taken him off the road. We are convinced that either the Kalil car or the Foster truck, or both, were in the way of the Andrews car after they had collided, or that their impact immediately in front of the Andrews car created an emergency causing Andrews to act quickly under the stress of fear and apprehension concerning the safety of himself and the other occupants of his car.

■ We construe the judgment of our brother below as holding that the drivers of both vehicles were at fault. Counsel insists that this is incorrect, asserting that the demand in reconvention was dismissed because of insufficient proof of the damages claimed. If counsel be correct, the proper judgment on the reconventional demand should have been one of nonsuit. In rejecting the claims of the two passengers in the Andrews car, the court was clearly in error, because if the driver of that car be considered negligent, his negligence could not be imputed to his passengers, Harris v. Rhea (La.App.) 144 So. 200, and, as we have said, we find no negligence on the part of Andrews.

Believing as we do that the sole cause of the accident was the negligence of the driver of the Foster truck, we will now turn our attention to a consideration of the quantum of damages.

■ The plaintiff Neil Andrews claims $2,525 for physical pain and suffering and medical expenses and damages to the Ford car which he places at $300. He received a cut on the right side of the face requiring four sutures leaving a small scar. His right shoulder was sprained and he suffered brush burns on the right knee, shin, and shoulder. Although Andrews claims $300 for his car, it is admitted in brief that it was a 1929 Tudor Ford Sedan purchased seven months prior to the accident for the sum of $200. The car was so demolished as to be beyond repair and was left at the Norco garage. An allowance of $150 for the destruction of the

Ford, and $750 for physical suffering and medical expenses we believe to be correct.

■ A. B. Stuart claims $3,325 for physical suffering, impairment of health, and medical expenses. He sustained a fracture of the eighth rib on the right side, concussion of the brain, brush wounds of the back and elbows, contusions and lacerations of the forehead, right hand, and index finger. There is no proof of medical expenses. We will allow $1,000 for all items of damages claimed.

■ Charles Steimle claims $4,300. His injuries consisted of a sprain of the right shoulder, a cut on the forehead or scalp an inch above the hair line, a scalp wound behind the right ear, a cut in the right eyebrow, and a cut along the lower part of the right eye to the nose, down the nose to the upper lip, and along the lip which left a permanent scar faintly visible. He was taken to a doctor in Norco who stitched his wounds and then to the Charity Hospital where he was rebandaged and given anti-tetanus serum. He was laid up about six weeks. There is no proof of medical expenses. We will allow $1,500 for all items claimed.

For the reasons assigned, the judgment appealed from is reversed in so far as it dismisses the claims of the three plaintiffs, and it is now ordered that there be judgment herein in favor of Neil Andrews and against the defendants J. C. Foster and Great American Indemnity Company in the sum of $900 with legal interest from judicial demand and for all costs. It is further ordered that there be judgment in favor of Albert B. Stuart and against the defendants J. C. Foster and Great American Indemnity Company in the sum of $1,000 with legal interest from judicial demand and for all costs. It is further ordered that there be judgment in favor of Charles Steimle and against the defendants J. C. Foster and Great American Indemnity Company in the sum of $1,500 with legal interest from judicial demand and all costs.

In all other respects, the judgment appealed from is affirmed.

Reversed in part; affirmed in part.