**PHILLIPS et ux. v. HENDERSON et al.**

No. 6178.

Court of Appeal of Louisiana.    Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Heard & Heard, of Monroe, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

## TALIAFERRO, Judge.

Plaintiffs, Marvin Phillips and his wife, Dorothy Owen Phillips, were guest passengers of Mrs. Lucille Anderson Henderson when her De Soto club coupe violently ran into the Ford coupe of Mrs. Audrey Miller at about the hour of eleven P. M., on highway No. 80, approximately six miles west of the City of West Monroe, Louisiana. Mrs. Phillips was injured and sues Mrs. Henderson, the carrier of public liability insurance on her car, and Mrs. Miller for damages. Mr. Phillips joined in the suit and seeks judgment for physician's bill and cost of X-ray pictures incurred in treating his wife, and for loss of her earnings during disability.

Each owner was driving her own car. Mrs. Miller was backing her coupe northerly across the highway preliminary to turning around and Mrs. Henderson was traveling westerly on her side thereof when the collision occurred. The acts of negligence charged to Mrs. Henderson, alleged to be proximate causes of the accident, are: (1) Not maintaining a proper lookout ahead for traffic; (2) failing to stop her car before colliding with the other one; (3) failing to avert the collision by driving on to the shoulder either in front of or at the rear of the Miller car; (4) failing to control her car or do anything to avoid the accident.

The original petition also charges, as a cause of the collision, that Mrs. Henderson was driving at an excessive rate of speed, but this charge has been expressly abandoned in supplemental petition. It is admitted that the speed of her car at time and place of accident was not excessive.

The alleged negligence of Mrs. Miller consists of: (1) Attempting to turn her coupe around in the middle of the highway; (2) obstructing traffic thereon; and (3) not keeping a proper lookout for traffic.

The defendants deny that Mrs. Henderson was guilty of any negligence whatever as the cause or a contributing cause of the accident, and expressly aver that it is solely attributable to the acts of negligence of Mrs. Miller in the respects alleged by the plaintiffs.

Mrs. Miller did not answer, nor, so far as the record reveals, manifest any interest whatever in the suit. Issue, as to her, was joined by default.

The lower court, in written reasons, sustained the defenses urged by and on behalf of Mrs. Henderson, and held that the negligence of Mrs. Miller alone caused the collision. Plaintiffs' demands against Mrs. Henderson were rejected. They were given judgments against Mrs. Miller. Plaintiffs appealed and in this court contend that the court erred in exonerating Mrs. Henderson from negligence. Increase in the awards is asked.

The essential facts of the case are not controverted. Mrs. Miller, accompanied by a gentleman friend, was motoring westerly on the highway and decided to turn around. The attempt was made near a roadside night club called the "Willows". Her car was driven to its left (southerly) off of the eighteen foot concrete slab and then backed northerly across the road, possibly at a slight angle. Its rear end, according to plaintiffs' contentions, extended beyond the black medial line about six feet when struck.

Mrs. Henderson's coupe is equipped with "jump" seats immediately behind the two front seats. Persons occupying these "jump" seats face each other. They were occupied by Mr. and Mrs. Phillips. Mr. R. B. Henry was in the seat beside Mrs. Henderson. The party was on its way to Mr. Phillips' home some distance beyond the night club. The car was making approximately fifty miles per hour immediately prior to the accident. Its left front fender and wheel struck the Miller car near the middle of its left side. The highway for five hundred forty (540') feet east of the locus is straight and practically level.

The gravamen of plaintiffs' argument is that Mrs. Henderson should have seen the Miller coupe had she been maintaining a proper lookout, in time to stop her own car before ramming it, or in time to have veered to right or left and missing it entirely. They refer to the provisions of the Highway Regulatory Act (No. 286 of 1938), which require that motor vehicles operating on the highways of the state at night time be equipped with headlights of sufficient candle power to render clearly discernible, under normal atmospheric conditions, a person two hundred feet ahead. The lights of the Henderson car were functioning efficiently, but we are certain there was no opportunity to observe the Miller car backing across the highway until the distance between the cars was much less than two hundred feet. The rule referred to has particular application to objects or persons on the highway and not to objects or persons off of it.

Mr. Phillips observed the Miller coupe when about forty feet away. Mr. Henry estimated he saw it one hundred feet distant. Mrs. Henderson would not estimate the distance when she first observed it crossing the road. She says she did not see it "until I got right at it". She then applied the brakes forcefully and they responded, and veered the car to the right as far as possible and yet stay on the pavement. Referring to the accident, Mr. Phillips testified: "It just happened so quickly that I don't know whether the lights (of Miller car) were on or not."

To mentally reconstruct the scene immediately prior to and at the time of the collision, these facts are pertinent:

The Henderson car was moving at the rate of about seventy feet per second. It is safe to assume that the Miller coupe began backing across the slab at the rate of approximately fifteen miles per hour or twenty-two feet per second. Therefore, it required less than a second for it to back to the position where and when struck. When it began to back up, the Henderson car was likely less than one hundred feet away, and at the lapse of half a second this distance was reduced to about fifty feet, at which time the Miller car had progressed more than half the distance to the locus where hit because its rate of travel was being reduced preparatory to turning to its left. Mr. Phillips says that it moved not more than two feet after he first saw it forty feet away.

The rear of the car then was only three feet from the edge of the pavement. This picture, if correct or nearly so, certainly discloses facts sufficient to constitute an emergency for which Mrs. Henderson was to no degree responsible. She was driving at a lawful rate of speed on a standard concrete highway, doubtless alert as to traffic conditions ahead of her. She was not looking for objects off of the highway and was not required to do so. Suddenly loomed the other car moving directly across her lane of travel. She saw it as soon as it came into view. The situation demanded quick resolution on her part and she met the challenge. She acted as quickly as her mental and physical powers could coordinate by forcefully applying the brakes and veering the car to its right as far as possible, and still stay on the concrete. The collision was not averted but it is evident her quick action did appreciably reduce the force of the impending impact. In the light of circumstances, she acted reasonably. The fact that she did not, if such were possible, drive off of the pavement on to one of the wide slopes on either side of it, under the circumstances, should not and does not amount to negligence of any type. Unless a motorist definitely knows that it is safe to leave the paved portion of the road and at a high rate of speed drive upon a dirt surface in the night time, he will not be expected to do so.

The rule is well settled in this state that a motorist, faced with an emergency not of his making, may not be convicted of actionable negligence because he errs in judgment in suddenly adopting a course intended to avert or reduce the apparent consequences of an impending danger. In such circumstances, he is not expected to exercise that accuracy of decision and resolution which would be required if acting calmly and deliberately.

It is pertinent here to add that on the day following the accident, plaintiffs and R. B. Henry signed a statement covering the facts of the collision, prepared in their presence by the insurer's adjuster, wherein they declare: "I think that the accident was due to the fault of the driver of the other car and not Mrs. Henderson's fault."

We are in accord with this statement and the conclusions of the trial judge that Mrs. Miller's negligence alone caused the accident.

The lower court awarded Mr. Phillips judgment for the amounts for which he sued. Mrs. Phillips was awarded $200 for pain and suffering. We are urged to increase this amount to $1,000.

Immediately after the accident, Mrs. Phillips and R. B. Henry were carried to the office of Dr. Gallaspy in the City of Monroe. She was suffering from mild shock and pain. There were multiple bruises and contusions about the body. A blood vessel of the lower third of the left leg was ruptured. Swelling which followed reached the ankle and groin. First aid was administered and the patient instructed to return home and rest. She visited the doctor daily for four weeks for treatment, during which time she experienced some pain and considerable discomfort. The greater part of the first three weeks was spent in bed. Crutches were used the fourth week.

We do not think $200 adequate. It will be increased to $400.

For the reasons herein assigned, the judgment appealed from in favor of Mrs. Dorothy Owen Phillips and against Mrs. Audrey Miller is amended by increasing the amount thereof to four hundred ($400) dollars, and, as amended, this judgment and that in favor of Marvin Phillips against Mrs. Audrey Miller are affirmed with costs.